# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### ANDERSON DIVISION

| | | |
|---|---|---|
| IN RE: LANDAMERICA 1031 EXCHANGE SERVICES, INC. INTERNAL REVENUE SERVICE § 1031 TAX DEFERRED EXCHANGE LITIGATION | ) ) ) ) ) | **Case No. MDL No. 2054** |
| Angela M. Arthur, as Trustee of the Arthur Declaration of Trust, dated December 29, 1988; Vivian R. Hays, an individual; Leapin Eagle, LLC, a limited liability company; Denise J. Wilson, an individual; Gerald R. Terry, an individual, Ann T. Robbins, an individual; and Jane T. Evans, an individual; on their own behalf and on behalf of a class of others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) | **Southern District of California C.A. No. 3:09-cv-00054** **District of South Carolina C.A. No.: 8:09-cv-00415 C.A. No.: 8:09-cv-01739** |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| Theodore L. Chandler, Jr.; G. William Evans; Stephen Connor; Ronald B. Ramos; Devon M. Jones; and Brenton J. Allen, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## ORDER AWARDING ATTORNEY FEES AND APPROVING LITIGATION COSTS

This matter comes before the Court on the Plaintiffs' Unopposed Motion for Award of Class Counsel Attorneys' Fees and Reimbursement of Costs filed on August 10, 2012. This Motion is made in conjunction with the Motion for Final Approval of the Class Action Settlement of this action against Theodore L. Chandler, Jr., G. William Evans, Stephen Connor, Ronald B. Ramos, Devon M. Jones, and Brenton J. Allen, former officers and directors of

LandAmerica §1031 Exchange Services, Inc. ("LES") and/or LandAmerica Financial Group, Inc. (LFG) (collectively referred to hereafter as the "D&O Defendants").

Pursuant to the Court's Preliminary Approval Order and the Notice provided to the Class, the Court conducted a hearing on these issues, under Fed. R. Civ. P. 23(e), on November 7, 2012. The Court has reviewed the materials submitted by the parties and has heard the arguments presented at the hearing. For the reasons cited herein, the Court finds and concludes as follows:

As a preliminary matter, the Court has jurisdiction over the subject matter of this action, the parties, and the Class. Notice of the requested award of attorneys' fees and reimbursement of costs was directed to Class Members in a reasonable manner by First Class Mail to their most recent known addresses and complies with Fed. R. Civ. P. 23(h)(1).

Class Members have been given the opportunity to object to the requested award of attorneys' fees and costs in compliance with Fed. R. Civ. P. 23(h)(2). None of the Class Members objected to the requested award.

## I.    Attorney Fees.

An award of reasonable attorneys' fees is within the discretion of the Court. *Alexander S. v. Boyd*, 113 F.3d 1373, 1390 (4th Cir. 1997); *Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 138 (4th Cir. 1994); *see also Mercer v. Duke Univ.*, 401 F.3d 199, 212 (4th Cir. 2005); *Plyler v. Evatt*, 902 F.2d 273, 277-78 (4th Cir. 1990) (noting "review of the district court's award is sharply circumscribed; we have recognized that because a district court has close and intimate knowledge of the efforts expended and the value of the services rendered, [the fee award] must not be overturned unless it is clearly wrong.") (internal quote marks omitted).

### A.    Percentage Of The Fund.

For well over a century, the United States Supreme Court has recognized the "common fund" exception to the general rule that a litigant bears his or her own attorney's fees. *Trs. v. Greenough*, 105 U.S. 527 (1882). The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." In *Blum v. Stevenson*, the Supreme Court expressed its preference for determining reasonable fees as a percentage of the fund under the common fund doctrine. 465 U.S. 886, 900, n. 16 (1984).

Within this Circuit, the percentage of the fund approach is not only permitted, but is the preferred approach to determining attorneys' fees. *See Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D.Md. 1998) (noting endorsement of percentage-of-recovery method by several courts in the Fourth Circuit); *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 786-87 (E.D.Va. 2001); *Strang v. JHM Mortgage Sec. Ltd. Partnership*, 890 F. Supp. 499, 503 (E.D.Va. 1995) ("the percentage method is more efficient and less burdensome that the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases"); *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 760 (S.D.W.Va. 2009).

The common fund method is particularly appropriate where, as here, the settlement confers a substantial benefit on members of a class. *Boeing Co.*, 444 U.S. at 479. *See also Teague v. Bakker*, 213 F. Supp. 2d 571, 584 (W.D.N.C. 2002) ("an award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefitted the fund – whether they tended to create, increase, protect or preserve the fund"). It is also viewed as the

preferable method in cases such as this one, where the Plaintiffs agreed to pay counsel on a contingency fee basis. Class Counsel were not hired on an hourly basis, nor have any of their fees or expenses been paid as would have been required in representation on an hourly basis. Accordingly, this Court will determine the reasonableness of the requested fee using a percentage of the fund approach.

### B. *Barber* Factors.

Plaintiffs and Class Counsel have requested attorneys' fees of $989,973.07, which is 25% of the settlement funds recovered for the class.[1] Plaintiffs' request is in compliance with Local Rule 54.02(A) which requires that petitions for attorney's fees comply with the requirements of *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978).[2] To determine the reasonableness of the fee award sought by Class Counsel in this action, this Court has considered each of the *Barber* factors:

(1)     time and labor expended;
(2)     novelty and difficulty of the questions raised;
(3)     skill required to properly perform the legal services rendered;
(4)     attorney's opportunity costs in pressing the litigation;
(5)     customary fee for like work;
(6)     attorney's expectations at the outset of litigation;
(7)     time limitations imposed by the client or circumstances;
(8)     amount in controversy and results obtained;
(9)     experience, reputation and ability of the attorney;
(10)    undesirability of the case within the legal community in which the suit arose;

---

[1]  The parties agreed that should the settlement go forward with opt outs, the Settlement Fund would be reduced *pro rata* by the share of the fund attributable to the opt outs per ¶7.21.5 of the Class Action Settlement Agreement. There are three class members who did not retract their Requests for Exclusion and whose gross *pro rata* shares of the Settlement Fund total $40,107.73. Accordingly, the original $4 million settlement was reduced to $3,959,892.27.

[2]  The factors are derived from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), which was adopted by the Fourth Circuit in *Barber,* 577 F.2d at 226.

(11)     nature and length of the professional relationship between the attorney and client; and

(12)     attorneys' fee awards in similar cases.

*Id.* at 226, fn. 28.

### 1.     *Time and Labor Expended.*

In the more than three and one-half years this litigation has been pursued, Class Counsel have invested significant amounts of time and effort in litigating the claims against the D&O Defendants.  Class Counsel have accrued approximately 4400 attorney hours and have also expended $60,882.57 in out-of-pocket expenses in pursuit of these claims.  Furthermore, significant additional hours of professional time will be required to see this case through to a full and final conclusion.  The hours and expenses incurred in the pursuit of these claims over several years demonstrate the scope of Class Counsel's contributions to the favorable resolution of this risky and vigorously defended litigation.

The class actions now consolidated in this MDL were filed in early 2009 after Class Counsel conducted intensive investigation of the matter.  Class Counsel prepared and filed pleadings on behalf of Plaintiffs and the putative class, while simultaneously appearing in and monitoring the LES/LFG bankruptcy proceeding.  Plaintiffs' counsel in the South Carolina and California class actions worked cooperatively to seek MDL treatment for the class cases, arguing their motion before the Panel on Multi-District Litigation to establish the MDL before this Court.

Over the course of the litigation, counsel for the class worked diligently on two fronts – in the Bankruptcy Court of the Eastern District of Virginia and this Court – to further the interests of the MDL Plaintiffs and class members.  They filed adversary proceedings in the Bankruptcy

Court, allowing them to obtain voluminous discovery pertinent to MDL issues. Meanwhile, heavy motions practice in this Court required extensive research and briefing, as well as numerous appearances for status conferences and hearings. Ultimately, Class Counsel participated in weeks of negotiations culminating in the proposed class action settlement now before the Court for final approval.

The Court finds that the journey that brought the Plaintiffs and the D&O Defendants to the point of compromise was arduous and that extensive labor and effort was expended by Class Counsel. The settlement reflects a favorable result attributable to their diligence, determination, hard work, and skill.

### 2. *Novelty and difficulty of the questions involved.*

This litigation involved complex issues in an undeveloped area of the law requiring Class Counsel to dissect IRC §1031 and the regulations thereunder. Because many of the critical issues in the litigation were not specifically addressed by precedent, extensive legal research was required to unearth cases with arguably analogous facts to bolster Plaintiffs' arguments. The complexity and unique nature of the issues herein required Class Counsel keep abreast of other exchange facilitator/Ponzi scheme cases being litigated around the country in order to evaluate rulings for authority supporting the class claims.

### 3. *The skill required to perform the legal services properly.*

A class action involving complicated and technical property and transactional issues in a developing area of the law requires skilled counsel to represent the class. Class Counsel pursued this litigation with diligence and tenacity, drawing upon decades of prior experience in complex cases. Mr. Gilreath and Ms. Perkins called upon extensive and diverse experience in business,

securities, and tax class cases, as well as other representative actions. Mr. Foley and Mr. Brace brought to the table a wealth of experience from other exchange facilitator class litigation.

The skill required of Class Counsel may also be reflected in the quality of opposing counsel. *See, e.g., Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D.Fla. 1991); *In re King Resources Co. Sec. Litigation*, 420 F.Supp. 610 (D.Colo. 1976) (considering the reputations of defense counsel in determining fee as their stature reflects the challenges faced by the plaintiffs' attorneys). Here the D&O Defendants and their carriers were represented by a team of experienced, capable, and relentless counsel from highly reputable law firms, who zealously defended the matter.

Class Counsel's achievement in obtaining a substantial settlement in this action defended by renowned counsel is a testament to the quality of Class Counsel's representation.

### 4. The attorneys' opportunity costs in pressing the litigation.

Before this case is finally concluded, the prosecuting law firms will have incurred more than 4500 hours of attorney time over a period of four (4) years and will have spent substantial monies to finance the case, funds that could not be invested in other cases. The firms primarily accruing the hours – Whetstone Myers Perkins & Fulda, LLC and The Gilreath Law Firm, P.A. are not large firms with dozens of partners. The attorney time committed by these firms to representing the class is significant, given the total attorney time available for these firms to pursue cases that they had or could have had over this time period.

In complex, multi-year class actions, the risks inherent in the litigation are immense and the risk of receiving little or no recovery is a major factor in awarding attorney fees. *Phillips v. Crown Cent. Petroleum Corp.*, 426 F.Supp. 1156, 1170 (D.Md. 1977). The risk of no recovery

in complex cases of this sort is not merely hypothetical. Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and costs advanced, but lost the case despite their advocacy. *See, e.g., Glover v. Std. Fed. Bank*, 283 F.3d 953 (8th Cir. 2002) (reversing class certification).

### 5. *Customary fees.*

When attorneys accept a case on a contingency basis, it is customary to charge one-third or more of any amount recovered for the client and this market rate is highly relevant. A 25% award from the common fund is this case is consistent with, if not below, what is routinely privately negotiated in contingency fee litigation. In non-class contingency fee litigation, a 20% to 40% contingency fee is typical. "[A] one-third fee is a common benchmark in private contingency fee cases." *See Allapattah Servs. Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1212 (S.D.Fla. 2006) (citations to studies and reports omitted).

Courts often award fees in class actions that are in the range of 30% or more. Percentage awards are typically set at between 25-30% of the common fund. *Manual For Complex Litigation* (Fourth) §14.121 (2004). Recently, the Honorable Liam O'Grady surveyed common fund fee awards in the Fourth Circuit and elsewhere and found percentage awards that ranged from 18% to 30%, inclusive of mega-fund recoveries that reached into the nine figure range. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 264 (E.D.Va. 2009).

Class Counsel's request for a 25% fee falls at the low end of the average range of fees awarded in common fund class actions, excepting mega-fund cases. *See, e.g., MRRM, P.A. v. W.R. Grace & Co.*, 404 F.3d 863 (4th Cir. 2005) (fee request of 28.75% of $70 million settlement awarded as class counsel fees); *Koenig . United States Bank N.A. (In re U.S. Bancorp Litig.)*, 291

F.3d 1035 (8th Cir. 2002) (attorney fee of 36% affirmed); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (award of $13.3 million in attorneys' fees from $40 million settlement fund – 33-1/3% of total recovery); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) (attorney fee award of approximately 31% of settlement affirmed); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D.La. 1997) (attorney fee of 36% of $127 million settlement); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285-86 (D. Minn. 1997) (awarding one-third attorney fee from $86 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 735 (E.D.Pa. 2001) (citing affidavit of Professor John C. Coffee, Jr. of Columbia University Law School, in which 289 class action settlements are compiled ranging from under $1 million to $50 million; average attorneys' fees percentage is 31.71% and median is one-third); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers (In re Harnischfeger Indus. Inc.)*, 212 F.R.D. 400 (E.D.Wis. 2002) (awarding fee of 30% of $10.15 million settlement).

> **6.      *The contingent nature of the matter/expectations at the outset of the litigation.***

Class Counsel took this case on a contingency basis and understood from the outset that there would be no attorneys' fee without a recovery for the Plaintiffs or the Class.  They have worked for years with no payment on this litigation, accruing more than 4400 attorney hours, and undertaking the risk of walking away with no payment at all.   Moreover, Class Counsel could have lost their entire investment in out-of-pocket expenses, in the amount of $60,882.57.   Such "burdens are relevant circumstances" that support the requested award.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993).

Class Counsel expected that Defendants would present a vigorous defense and fully expected to litigate this case to final judgment on the merits, and possibly on appeal. Counsel were prepared to see this case through, even if it took many years, the expenditure of large outlays of cash, the consumption of great amounts of time, and potential additional litigation to collect on any award obtained. Class Counsel also expected to be compensated for their efforts (if successful) in the form of a reasonable percentage of the common fund obtained for the benefit of the Class.

### 7. *The time limitations imposed by the client or circumstances.*

This class action necessitated extensive efforts in research, briefing, document review, motions practice, and the recent protracted settlement negotiations. Often Class Counsel were called upon to address issues on short notice. Class Counsel's Declarations document that at various stages, the time demands of this case required Class Counsel to delay or forgo work on other cases. In this regard, "priority work that delays the lawyer's other work is entitled to some premium." *Johnson,* 488 F.2d at 718.

### 8. *The amount in controversy and the results obtained.*

The results achieved here are excellent. When this action began, exchange fund losses by LES Commingled Exchanger customers who comprise the class totaled more than $191 million. This damage number has continuously dropped with distributions made pursuant to the LFG/LES Chapter 11 Plan's waterfall provisions from cash on hand, funds generated by sales of auction rate securities, and settlements achieved by the bankruptcy Litigation Trustees. The Class Settlement allows for distributions to the class that will result in an overall recovery at or close to 100% of the remaining lost exchange funds.

Despite many roadblocks, Class Counsel were able to negotiate $4 million dollars in gross recovery for the Class.[3]  This result is a good result for the Class in light of the strengths and weaknesses of the remaining claims and the recoveries they have already received..

### 9.    The experience, reputation and ability of counsel.

Class Counsel consist of firms with extensive expertise in complex litigation and with a history of success in difficult, high-stakes litigation.  As reflected in the record, Class Counsel have extensive backgrounds in class actions and other complex litigation.  Their reputations are impeccable.

### 10.    The undesirability of the case.

The risks undertaken in mounting this litigation were considerable.  This case was one of unusual complexity and the risk of non-recovery escalated tremendously when first the Bankruptcy Court and then this Court concluded that LES owed no fiduciary duties to its Exchanger customers.  In addition, the likelihood of a large verdict diminished as the LES Commingled Exchangers recouped greater and greater percentages of their lost exchange funds through the Bankruptcy Court.

### 11.    Nature and length of the professional relationship between attorney and the client.

Plaintiffs quickly retained Class Counsel law firms in the wake of the LES bankruptcy as their exchange transactions failed and their exchange funds remained inaccessible.  The named Plaintiffs and many of the individual class members have worked cooperatively with Class

---

[3]  This amount is reduced by approximately $40,000, which is the *pro rata* share attributable to the three class members who timely requested exclusion from the class and did not retract their requests.

Counsel assisting in the pursuit of the litigation.

### 12. *Attorneys' fees awarded in similar cases.*

Class Counsel have requested a fee of 25% of the total recovery which amounts to $989,973.07. Based on fee awards in other cases cited in this order, the fee request is comparable, given the complexity of the litigation, the duration, and the risks undertaken.

The Court concludes that the *Barber* factors support the reasonableness of the requested attorneys' fee award, with a number of the factors strongly supporting the requested award.

### C. Lodestar Cross-check.

A Court may choose to "cross-check" the results of a percentage-fee award against the attorneys' "lodestar." *See, e.g., Kay Co. v. Equitable Prod. Co.*, 2010 U.S. Dist. LEXIS 118256, at *14 (S.D.W.Va. Nov. 5, 2010) ("I will also apply the lodestar cross-check as an element of objectivity in my analysis."). The "lodestar" is derived by multiplying the attorney and professional hours devoted to a case by the timekeepers' individual billing rates. A risk multiplier is then applied. The lower the multiplier, the more reasonable the fees sought, i.e., a multiplier of 2 is preferable to a multiplier of 4, and so forth.

Applying the lodestar method as a cross-check, the record shows that Class Counsel have devoted more than 4400 hours of attorney time and more than 386 hours of paralegal time in pursuit of this litigation. Class Counsel firms have submitted Declarations documenting billing rates actually charged and paid in similar complex transactional matters. On a straight time basis, Class Counsel assert that their time expended has a market value of $2,699,164.50 based on these hourly rates. Such hourly rates are appropriate for the type and caliber of representation provided in this case, and are supported as being in the range of rates actually charged by and

paid to the law firms. The "actual rate that counsel can command on the market is itself highly relevant proof of the prevailing community rate." *Bebchick v. Washington Metropolitan Area Transit Com.*, 805 F.2d 396, 404 (D.D.C. 1986).

Based on this lodestar amount, the 25% fee award requested here – $989,973.07 – not only requires no risk multiplier, but is less than 37% of the actual base lodestar amount. What this clearly illustrates is that the fees requested by Class Counsel for their work on this case are substantially less than the market value of the work performed, despite the tremendous risks undertaken.

In summary, the Court finds that Class Counsel's request for fees is unopposed by Defendants, not subject to any objection by any Class Member, is strongly supported by the *Barber* factors, is overwhelmingly supported by the lodestar cross-check, and is comparable to fee awards in other class cases given the complexity of the litigation, the duration, and the risks undertaken. Accordingly, this Court finds and concludes that Class Counsel's request for fees of $989,973.07 (25% of the settlement fund) is fair and reasonable. This Court awards the fee in the aggregate based on the representation of Class Counsel that the Class Counsel firms have entered into an agreement apportioning the fee award among themselves. *See, e.g., In re "Agent Orange" Liability Litigation*, 818 F.2d 216 (2d Cir. 1987) ("There is authority for a court, under certain circumstances, to award a lump sum fee to class counsel. . . and then to permit counsel to divide this lodestar based fee among themselves under the terms of a private fee sharing agreement.")

## II.     Litigation Costs and Expenses.

Reimbursement of reasonable costs and expenses to counsel who create a common fund

is both necessary and routine. *In re Synth\roid Mktg. Litig., ("Synthroid I")*, 264 F.3d 712, 722 (7th Cir. 2001); *Strang,* 890 F. Supp at 503.  Class Counsel have advanced or incurred to date $60,882.57 in expenses.  Because these expenses were advanced with no guarantee of recovery, Class Counsel had a strong incentive to keep them to a reasonable level. Class Counsel have provided the Court with a summary of the expenses advanced.

The Court finds that the $60,882.57 in litigation costs and expenses incurred by Class Counsel have been adequately documented and appear reasonable and necessary and incurred for the benefit of the class.  No class member has filed an objection to the amount or categories of costs documented.   The Court finds that reimbursement of this amount is reasonable and justified.

Based on the foregoing findings of facts and conclusions of law,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Class Counsel are hereby awarded attorneys' fees in the amount of $989,973.07, to be allocated between and among them in accordance with their agreement, as set forth in above, and are awarded reimbursement of costs and expenses of litigation in the amount of $60,882.57.  By agreement of counsel, the Class Counsel firms will divide the fee and cost award as follows: Whetstone Myers Perkins & Fulda, LLC: $499,357.44; The Gilreath Law Firm, P.A.: $433,462.65; Foley, Bezek, Behle & Curtis, LLP: $118,035.55.

IT IS SO ORDERED.

November 7, 2012                              Joseph F. Anderson, Jr.
Columbia, South Carolina                United States District Judge